IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

RABEKKA J. SANTIAGO,              )
                                  )
    Plaintiff,                    )
                                  )
                                  )    CIV-13-510-HE
v.                                )
                                  )
CAROLYN W. COLVIN,                )
  Acting Commissioner of Social   )
   Security Administration,       )
                                  )
    Defendant.                    )

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for disability insurance benefits and supplemental security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff protectively filed her applications for benefits on June 17, 2010. (TR 98, 99, 166-169, 170-171). She alleged she became disabled on May 27, 2010, which is the day

1

after the Appeals Council denied her previous application for benefits. (TR 200). Plaintiff alleged disability due to depression, anxiety, fibromyalgia, unidentified "neck, back, [and] feet" problems, thyroid disorder, osteoarthritis, and chronic sinus infections. (TR 204). Plaintiff previously worked as a hair stylist, receptionist, cashier, certified nursing assistant ("CNA"), census taker, and personal care aid. (TR 205, 210). At the time she filed her applications, she was working part-time (12 hours per week) as a personal care aid. (TR 205).

In a description of her usual daily activities completed in August 2010, Plaintiff stated that she was "[a]lways in bed except for 10 hrs a wk for work," she lived with her 16-year-old son who "pretty much takes care of me," she did not "do much of anything" with regard to house or yard work, she drove "very little," she cooked meals sometimes, she used a cane for walking, and she shopped for groceries about every two months for 30 minutes at a time. (TR 219-225). Plaintiff checked boxes indicating she was limited in all areas of functional activities, but she did not explain the alleged limitations. (TR 223). Plaintiff stated she had a difficult time getting along with authority figures and had been fired from "most every job" in the past. (TR 224).

Plaintiff underwent a consultative physical examination conducted by Dr. Wiegman in September 2010. (TR 290-292). Plaintiff also underwent a consultative psychological evaluation in the same month conducted by Dr. Poyner. (TR 286-289).

Plaintiff's medical records reflect that Plaintiff's primary medical provider was Ms. Dawna Johnson, an Advanced Registered Nurse Practitioner, between July 2009 and November 2011. (TR 264-282, 383-398). In July 2009, Plaintiff reported to Ms. Johnson that

2

she had been without medical treatment for several years and had been "told [by a previous physician that she] had fibromyalgia." (TR 281). Ms. Johnson prescribed medications. In August 2009, Ms. Johnson noted that Plaintiff returned for a follow-up visit, that she complained of "panic attacks" and numbness. (TR 279). According to Ms. Johnson, Plaintiff was "happy [and] talkative," she "look[ed] great today," and she was using a cane for ambulation "but gait [was] steady." (TR 279-280). Medications were prescribed, including Neurontin®, Xanax®, and Flexeril®, for fibromyalgia, general anxiety disorder with panic attacks, osteoarthritis, cervical degenerative disc disease, and sleep disturbance. (TR 280).

In September 2009, Plaintiff sought hospital emergency room treatment for a three-month toothache. (TR 259). Plaintiff stated she was taking prescribed pain medication but wanted something stronger. (TR 262). The examining physician declined to prescribe stronger pain medication and advised Plaintiff concerning access to community health centers in her area. (TR 262). Plaintiff reportedly "left angry" and stated she would never go to that hospital again. (TR 262-263).

In February 2010, Plaintiff was treated at a hospital after she fell and hit her face on the trailer hitch of her mobile home. (TR 250). A physical examination and CT scan of Plaintiff's head did not reveal abnormalities other than tenderness on her nose. (TR 250-251). Plaintiff was discharged in stable condition. Plaintiff reported to Ms. Johnson in June 2010 that her prescribed medications, Neurontin® and Lortab®, "control her neck and upper back pain and radiculopathy symptoms well," and the Flexeril® she took as needed for muscle spasms was "also effective." (TR 266). Plaintiff complained of sinus symptoms and previous

3

"thyroid issues" for which she wanted medications. (TR 266). Plaintiff complained of nausea and dizziness only after eating and stated that when she laid down these symptoms "resolve[d] quickly." (TR 266). Ms. Johnson noted Plaintiff's arms and chest were sunburned and she was "well appearing."

In a physical examination, Ms. Johnson noted Plaintiff exhibited a steady gait, good cervical range of motion without limitations, and active range of motion in her upper extremities without limitations. (TR 268). Her medications were refilled, including medication for hypothyroidism "by history." (TR 269). In March 2011, Ms. Johnson again noted that Plaintiff's gait was steady and she exhibited good cervical range of motion with limitations although she had some pain with movement in her right shoulder and her "fibromyalgia trigger points [were] very [tender to palpation]." (TR 385). Plaintiff was noted to be "[p]leasant and conversational." (TR 385). Plaintiff reported she had stopped attending counseling sessions because she was "doing better and she cannot afford to go at present." (TR 386).

Plaintiff was seen by Ms. Johnson in November 2011. At that time, Plaintiff complained she had fallen twice at work and was on medical leave. (TR 391). She was seeing a worker's compensation doctor and awaiting MRI testing. She reported her previously-prescribed medications, Neurontin® and Lortab®, helped her symptoms. (TR 391). On examination, Plaintiff exhibited a slow and steady gait, muscle spasms in her neck and spine, "very tender" trigger points in her back and shoulders, and some limited cervical range of motion, but she was noted to be "well kept and very pleasant" and "using rational

thought and good judgment." (TR 393).

Plaintiff underwent magnetic imaging resonance ("MRI") testing of her lumbar, thoracic, and cervical spines in December 2011. (TR 347-350). These tests were interpreted by Dr. Murphy as showing a "[m]inimal" disk bulge at one level of Plaintiff's lumbar spine with "minimal bilateral neural foraminal narrowing without spinal canal stenosis," no abnormal findings in Plaintiff's thoracic spine, and minimal or mild disk bulges at three levels in Plaintiff's cervical spine with "mild spinal canal stenosis without neural foraminal narrowing." (TR 347-350).

Ms. Johnson completed a Medical Source Statement - Mental for Plaintiff dated December 20, 2011. (TR 401-402). In this statement, Ms. Johnson opined that Plaintiff was markedly limited in her abilities to make judgments on simple work-related decisions, interact appropriately with supervisors, interact appropriately with co-workers, respond appropriately to usual work situations and to changes in a routine work setting, and complete a normal work-day and work-week without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.

Ms. Johnson also completed a Medical Source Statement - Physical for Plaintiff dated December 20, 2011. (TR 405-406). In this statement, Ms. Johnson opined that Plaintiff could lift less than 10 pounds, stand and/or walk for at least 2 hours in an 8-hour workday, sit less than 4 hours in an 8-hour workday, had a limited ability to push and/or pull with her upper extremities, could never climb, could occasionally balance, stoop, kneel, crouch, or crawl,

5

could occasionally reach with her hands and arms, must avoid concentrated exposure to extreme cold, wetness, and humidity, and must avoid even moderate exposure to extreme heat, vibration, fumes, odors, dust, gases, or poor ventilation.

Plaintiff appeared at a hearing conducted by Administrative Law Judge Headrick on January 11, 2012. (TR 30-67). Plaintiff testified she was 46 years old, lived with her 17-year-old son, had completed the eleventh grade, and worked until September 2011 for ten to 15 hours per week[1] as a personal care aide doing light housekeeping and running errands for elderly clients. Plaintiff described herself as "bedridden" due to chronic pain in her neck, back, and shoulder, and migraine headaches for which she took medications, including narcotic pain medication and anti-anxiety medication. Plaintiff stated she had to leave work or not go to work "at least twice a week" while working her part-time job. At the time of the hearing, she stated she was in bed "24 hours a day" except for brief bathroom trips.

Plaintiff stated she had been advised to do stretching exercises and lose weight, but the exercises provided only temporary pain relief, and she could not afford physical therapy. Plaintiff estimated she could lift a gallon of milk, sit for 10 to 15 minutes, concentrate for five minutes, drive for 10 to 15 minutes, and walk half a block "before the pain would be unbearable" and she had to stop. She used a cane "50 to 75 percent of the time" that was not prescribed by a doctor. She stated she could not reach overhead or type on her computer due to pain in her arms and hands, and she described losing her grip and inability to button

---

[1] Plaintiff stated she was still employed at the time of the hearing.

buttons or tie shoelaces. Plaintiff described anxiety with mood swings, difficulty with crowded places, and aggressiveness that had caused her to lose jobs and clients. She stated she used marijuana once a week to help with pain and sleep, although her doctor was not aware of this usage. She was unable to perform household chores or cooking without assistance from her son. A vocational expert ("VE") also testified.

The ALJ issued a decision in February 2012 in which the ALJ found that Plaintiff had severe impairments due to neck pain, fibromyalgia, and generalized anxiety disorder with panic attacks. (TR 15). Following the agency's well-established sequential evaluation procedure, the ALJ found at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. In connection with this finding, the ALJ considered the Plaintiff's mental impairment and resulting functional limitations, as required by Listing 12.06. The ALJ found that Plaintiff had mild restrictions in her activities of daily living, moderate difficulties in social functioning, mild difficulties in concentration, persistence, or pace, and no episodes of decompensation of extended duration. (TR 16). Considering the medical and non-medical evidence, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the limitation that she would be moderately limited in her ability to interact appropriately with the general public. (TR 17-23). In light of this RFC for work, the ALJ found that Plaintiff was not capable of performing her past relevant work as a home health care and nurse's aide. (TR 23). Given her vocational characteristics (44 years old on the alleged disability onset date, limited education) and her RFC and relying on the VE's

hearing testimony, the ALJ found that Plaintiff was not disabled because she could perform jobs available in the economy, including the jobs of mail clerk, food service worker, circuit board assembler, and machine operator. (TR 23-24).

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

III. Evaluation of Opinion of Non-Acceptable Medical Source

Plaintiff first contends that the ALJ erred as a matter of law in evaluating the opinions of Plaintiff's treating Advanced Registered Nurse Practitioner, Ms. Johnson. The ALJ

8

recognized in the decision that Ms. Johnson had provided medical source opinions concerning Plaintiff's mental and physical functional abilities. (TR 22). The ALJ stated that Ms. Johnson was not an acceptable medical source and "therefore, her opinion/records are given little weight. Additionally, it must be noted that the evidence of record does not substantiate her records [sic], as they are significantly more limiting than all other records." (TR 22).

The governing regulations distinguish between opinions from "acceptable medical sources," who are defined as licensed physicians, psychologists, podiatrists, and qualified speech-language pathologists, and other health care providers who are not considered "acceptable medical sources." 20 C.F.R. §§ 404.1513(a), (d)(1), 416.913(a), (d)(1). Social Security Ruling ("SSR") 06-3p addressed and clarified how these opinions from other medical sources should be evaluated. SSR 06-3p, 2006 WL 2329939, at *4.

In this policy statement, the agency explained that the clarification became necessary because

> [w]ith the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources ... are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

Id. at *3.

9

In evaluating opinion evidence from other medical sources, the agency directed ALJs to apply the same factors to opinion evidence from "other sources" as they apply to opinion evidence from "acceptable medical sources," including the length and frequency of the treatment relationship, the consistency of the opinion with other evidence, the degree of support offered for the opinion, how well the medical source explains the opinion, whether the medical source is a specialist, and "[a]ny other factors that tend to support or refute the opinion." Id. at * 4-5. Further, the ALJ should "explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence ... allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." Id. at *6.

Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1995).

The ALJ recognized in the decision that Ms. Johnson was not an acceptable medical source and concluded that her opinions should be accorded "little weight." The ALJ first reasoned that she was not an acceptable medical source. This conclusion is not an adequate reason, however, for giving little weight to Ms. Johnson's opinions. In a recent unpublished decision, the Tenth Circuit Court of Appeals stated in a similar case involving the evaluation of the opinion of a licensed social worker that the ALJ erred by rejecting the opinion merely because the social worker was not an "acceptable medical source." Crowder v. Colvin, __

Fed.Appx.__, 2014 WL 1388164, *4 (10th Cir. 2014).

The ALJ also stated in the decision that "the evidence of record does not substantiate her records [sic], as they are significantly more limiting than all other records." (TR 22). Although inarticulately stated, it appears the ALJ was reasoning that Ms. Johnson's opinions were inconsistent with other medical evidence in the record. But the ALJ did not point to any specific inconsistencies between Ms. Johnson's medical opinions and the medical evidence in the record, either Ms. Johnson's own office notes or the records of any other medical source.

The Commissioner responds by asserting that the ALJ provided specific and legitimate reasons for according little weight to Ms. Johnson's opinions. In support of this argument, the Commissioner refers to the ALJ's discussion earlier in the decision of Ms. Johnson's office notes of her treatment of Plaintiff. While discussing the medical evidence supporting the step four RFC finding, the ALJ stated that Plaintiff had been treated by Ms. Johnson but that as a nurse practitioner Ms. Johnson was not an acceptable medical source, and the ALJ had therefore given "little weight" to Ms. Johnson's medical records apparently because she was not a treating physician. (TR 19).

However, nothing in the agency's regulations or policy statements would suggest that a medical source's treatment records themselves should be discounted merely because the medical source is not a treating physician or other acceptable medical source. Instead, the agency prescribes that evidence from other medical sources may be used "to show the severity of the individual's impairment(s) and how it affects the individual's ability to

11

function." SSR 06-03p, 2006 WL 2329939, at *2; 20 C.F.R. §§ 404.1513(d), 416.913(d).

During the discussion of the medical evidence at step four, the ALJ pointed to two specific notations in Ms. Johnson's office notes. In one of these office notes, the ALJ pointed out that Plaintiff reported her prescribed medications were controlling her neck pain, upper back pain and radiculopathy and that the medication prescribed for her muscle spasms to be taken as needed was also effective. The ALJ also pointed to Ms. Johnson's office note in December 2011 showing she had advised Plaintiff to lose weight, engage in water exercises, and undergo physical therapy. (TR 19).

Although the ALJ did not specifically refer to any medical evidence in the record to support the conclusion that Ms. Johnson's medical source opinions were entitled to "little weight," the ALJ's decision provides sufficient explanation from which the Court, exercising "common sense," Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166 (10th Cir. 2012), can surmise that the ALJ was referring to the earlier discussion of the evidence when the ALJ stated that "the evidence of record does not substantiate" Ms. Johnson's opinions.

In this case, Ms. Johnson was Plaintiff's primary treating medical source. Her office notes of her treatment of Plaintiff contain no findings that would support the extreme limitations set forth in her medical source statements. In an effort to find support for Ms. Johnson's medical opinions, Plaintiff points to random findings in Ms. Johnson's office notes of her treatment of Plaintiff, but Plaintiff does not present any findings from Ms. Johnson's office notes that would support the severity of the limitations set forth in the medical source statements. Ms. Johnson's office notes, as briefly summarized herein, indicate that Plaintiff's

12

pain was controlled with medications and she reportedly stopped going to counseling because she had improved. The office notes repeatedly indicated that Plaintiff's mental status was good and she exhibited a steady gait and normal range of motion. Finally, as noted by a licensed practical nurse in Ms. Johnson's office in December 2011, Ms. Johnson advised Plaintiff that conservative measures, like weight loss, exercise, and physical therapy, were recommended as the only treatment for Plaintiff's minimal cervical and lumbar degenerative changes as shown on MRI testing. (TR 398).

And as the ALJ inarticulately suggested, there is no other medical evidence in the record that is consistent with Ms. Johnson's medical opinions. Plaintiff points to Dr. Wiegman's findings in his September 2010 consultative physical examination of Plaintiff. Mr. Wiegman did not find that Plaintiff was disabled or unable to perform the requirements of work at all exertional levels. Rather, Dr. Wiegman reported that Plaintiff exhibited "some pain in her neck," "tender[ness] on all fibromyalgia tender points today," and "slight weakness" of an unknown cause based on her subjective statements that she could not "walk for more than about 100 yards due to pain" or "stand for long periods of time or lift any significant amount of weight." (TR 292). Dr. Wiegman noted Plaintiff was able to walk without her cane and had good coordination in her fingers. (TR 291). Dr. Wiegman's report is not consistent with the opinions of extreme limitations set forth in Ms. Johnson's medical source statements.

Nor do the records of Plaintiff's treatment for three months by a worker's compensation doctor support Ms. Johnson's medical opinions. Plaintiff reported to this

13

doctor that she had back pain and symptoms related to a fall while working as a personal care aide. She was prescribed anti-inflammatory medication, and she reported she was doing better at her next office visit. (TR 357, 360). Her range of motion had improved, and the treating doctor noted her "lumbar sprain" continued to improve. (TR 361-362, 364).

Plaintiff later returned to the worker's compensation doctor after she reportedly was knocked over by a patient's dog. (TR 368). She was treated with medications for back strain and arthritis. (TR 370). She was advised to follow up with an orthopedic specialist for her back pain and a neurologist for her headaches. (TR 379). Plaintiff underwent MRI testing in December 2011 which showed minimal or mild degenerative changes in her lumbar and cervical spines. (TR 347-350). There is no record of further treatment.

Because the ALJ properly considered Ms. Johnson's opinions and provided reasons that are well supported by the record for giving those opinions "little weight," no error occurred in connections with the ALJ's evaluation of this opinion evidence.

IV. Step Four - RFC Assessment

Plaintiff contends that the ALJ's RFC assessment was not supported by substantial evidence. At step four, the claimant bears the burden of proving his inability to perform the duties of his past relevant work. See Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir. 1993). The assessment of a claimant's RFC at step four necessarily requires a determination by the ALJ of the credibility of the claimant's subjective statements. "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial

14

evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)(footnote omitted).

The ALJ determined that Plaintiff was able to perform light work although she would be moderately limited in her ability to interact appropriately with the general public. (TR 17). Plaintiff contends that the RFC finding is faulty because the ALJ did not included limitations "in terms of relating to supervisors an [sic] coworkers." Plaintiff's Opening Brief, at 17. Plaintiff points to Ms. Johnson's medical opinion that Plaintiff was markedly limited in several areas of mental functioning. However, as previously found, the ALJ evaluated Ms. Johnson's medical opinions and provided reasons that are well supported by the record for giving those opinions little weight. Plaintiff does not point to any evidence in Ms. Johnson's records of treatment of Plaintiff that would support her medical opinion that Plaintiff was markedly limited in performing mental work-related activities.

Plaintiff also points to the report of the consultative psychological examiner, Dr. Poyner. Dr. Poyner evaluated Plaintiff on one occasion in September 2010. Dr. Poyner reported that he observed Plaintiff "tended to [be] inappropriate in that she was mildly hostile with staff [and] often irritable and rude with the examiner." (TR 286). She was also "overly dramatic," "loud and demonstrative," and "did not respond well to redirection and sometimes became angry and sarcastic." (TR 286). Although Plaintiff reported to Dr. Poyner that she was "anxious and hopeless" and had symptoms of depression, anxiety, obsessive compulsive

15

disorder, and "not wanting to leave her home," Plaintiff also reported that she was not seeing a mental health professional and she was working as a personal care aide, "which require[d] her to help the elderly and disabled with housework, errands, grocery shopping, etc." (TR 286).

Dr. Poyner noted Plaintiff "did not appear highly anxious and evidenced none of the signs or symptoms of obsessions or compulsions," "there were no records to substantiate [Plaintiff's] report of multiple mental illnesses," and her "mental status exam was without deficit and she did not appear to be struggling with a serious or pervasive mental illness. There is some concern that [Plaintiff] may have some personality difficulties that impact her ability to interact with others [but] it is not believed that [Plaintiff] has any current psychiatric problems of such severity as to interfere with her daily living, family, recreational, social **and/or occupational** functioning." (TR 287)(emphasis added).

The ALJ noted in the decision that he had considered Dr. Poyner's report and summarized the report's findings. (TR 20). Dr. Poyner's statement in the report that Plaintiff's personality issues might impact her ability to interact with others is not evidence of a significant mental functional restriction. Dr. Poyner specifically stated that Plaintiff's mental impairments were minimal and would not interfere with her occupational functioning. Therefore, the ALJ did not err in failing to include additional mental limitations with respect to Plaintiff's ability to interact with coworkers or supervisors in the RFC assessment.

Because there is substantial evidence in the record to support the Commissioner's decision, and no error occurred in the ALJ's evaluation of the evidence, the Commissioner's

16

decision should be affirmed.

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before May 14th, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this 24th day of April, 2014.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE